UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STEPHEN W. LEIBHOLZ,** | Civil Action No.: 05-5148(DRD) |
| **Plaintiff** | OPINION AND ORDER ON FORMAL MOTION |
| v. | |
| **ROBERT HARIRI AND CELGENE CORP.,** | |
| **Defendants.** | |

This matter having been opened to the Court upon Motion by Robert Zeller, Esq., of the Rem Zeller Law Group, attorneys for Plaintiff, seeking leave to file a Second Amended Complaint pursuant to FED. R. CIV. P. 15(a); and considering Defendants' opposition; for the reasons set forth below, the Motion is hereby granted.

**I. FACTUAL BACKGROUND**[1]

Defendant Hariri ("Defendant/Hariri") is a medical doctor and researcher who specializes in the areas of neurosurgery, neurotrauma/critical care, cell biology and vascular pathology. Hariri formed LifeBank, Inc., which commenced active business operations in 1998, later changing its name to Arthrogenesis, Inc. LifeBank harvested stem cells from umbilical cords and placentas and performed medical research on the medical uses of umbilical blood stem cells.

---

[1] The factual background is taken from the Honorable Dickinson R. Debevoise's Opinion in this matter, July 13, 2006. (Document No. 35)[internal citations omitted].

-1-

Plaintiff Leibholz ("Plaintiff/Leibholz") is a businessman and physicist with experience in U.S. defense contracting. At the time Leibholz met Hariri, Leibholz was operating Chesapeake TechLabs, Inc., and was engaged in consulting services. In 2000, Leibholz was introduced to Lifebank as an advisor to Mr. Richard Farkas, one of the prospective investors in Lifebank. Thereafter, from early 2000, through September 2000, Leibholz periodically visited LifeBank and discussed management, marketing and technical matters with Hariri. Leibholz states that he and Hariri worked together on a preliminary design for a transporter device for live stem cells, and Leibholz incorporated a non-profit entity, the Biomedical Research Institute, Inc. ("BRI"), at Hariri's request.

According to Leibholz, the purpose of BRI was to perform research and development using LifeBank facilities and personnel, and to qualify LifeBank for certain government research grants. Leibholz also certified that he and Hariri explored possible participation in government defense projects involving stem cells. Liebholz claims that "during one or more meetings in September of 2000," Hariri offered to give Leibholz LifeBank stocks and stock options from Hariri's personal holdings in exchange for Leibholz's services. Leibholz avers that he agreed to this arrangement, but that he requested that Hariri confirm in writing the number of shares and share options that Hariri was proposing. Leibholz alleges that he continued to perform services for Hariri in reliance on Hariri's oral promises.

On September 29, 2000, Hariri wrote Leibholz a letter stating that Hariri wanted Leibholz to have an equity interest in LifeBank "as an incentive for further collaboration." In that letter, Hariri pledged to give Leibholz 20,000 shares of Hariri's stock in LifeBank and 20,000 warrants to purchase Lifebank common stock from Hariri's personal holding at $5.00 per share,

exercisable through December 31, 2005. Leibholz claims that during the twelve-month period following September 29, 2000, he made five visits to the LifeBank office and two trips to Oak Ridge, Tennessee, where he met with officials at the Oak Ridge National Laboratories ("REACT") and discussed a possible relationship with LifeBank. Further exploration of the REACT project was abandoned, however, when Hariri refused to participate. Although Leibholz met and spoke with Hariri during this time, they did not discuss Leibholz's compensation.

Sometime in 2004, LifeBank merged into Celgene, Inc., a major pharmaceutical and biotechnological company. This prompted Leibholz, who had only kept in sporadic touch with Hariri after 2002, to review his documents. On December 31, 2004, Leibholz sent a letter to Hariri demanding that Hariri honor the terms of his September 29, 2000, letter. Hariri refused, claiming that LifeBank had gone out of business and that, in any event, the September 29, 2000, offer was retracted by his October 2, 2000, letter.

Leibholz and his secretary certified that Leibholz did not receive Hariri's October 2, 2000, letter. Hariri paints a wholly different picture of Leibholz's involvement with LifeBank. According to Hariri, Leibholz continually represented that he had the ability to raise substantial funds for LifeBank.. Hariri admits that he engaged in preliminary discussions concerning a possible collaboration with Leibholz's company, TechLabs, to pursue government research grants. Hariri claims that his September 29, 2000, letter merely outlined the draft terms of a possible business relationship with Leibholz's company, and that this proposal was retracted by a letter sent to Leibholz on the next business day. The October 2, 2000, letter detailed a discussion Hariri had with John Haines, LifeBank's CEO, who advised Hariri against any business relationship with Leibholz. Hariri and his staff certified that Hariri sent the October

2, 2000, letter to Leibholz on October 2, 2000, by first class mail.

Hariri further denies having ever requested or received any services from Leibholz, as a consultant or otherwise, and characterizes Leibholz as someone "seeking to obtain a joint venture partner," whose overtures were repeatedly rejected by Hariri and LifeBank. Hariri points out that Leibholz never had access to LifeBank's books, records or proprietary information, and that Leibholz produced no records in connection with the alleged "consulting services." Hariri also avers that the only connection Leibholz had with Hariri and LifeBank after October 2, 2000, was Leibholz's unauthorized representation to government entities that Leibholz had potential access to Lifebank's products and services.

In his counterclaims, Hariri alleges that Leibholz is the owner and proprietor of an entity known as Gensor, Inc. ("Gensor"), which is billed on its website, www.gensor.com, as a biochemical and nanotechnology company. The Gensor website contains a page which lists the people and resources involved with the company, and this listing includes Hariri, who is identified as the Vice President and Chief Scientist. Hariri is specifically listed as follows:

> "**The VP Chief Scientist, Robert Hariri, MD, PhD**, is a biologist, neurosurgeon, and inventor with extensive scientific and entrepreneurial experience."

Gensor also has a picture of the laboratory of Lifebank, which is owned and operated by Hariri and which is wholly unconnected with Gensor, labeled as "Bio Laboratory" on its website. Hariri is not the VP and Chief Scientist of Gensor, nor is he associated with Gensor in any way. Leibholz was aware at all relevant times that the representations concerning the role of Hariri and his laboratory were false.

### III. PROCEDURAL HISTORY

Leibholz filed his Complaint on October 27, 2005, alleging that Hariri committed Securities Fraud, Fraud Under New Jersey Law, and Breach of Contract among other things. Leibholz also named Celgene Corporation ("Celgene") as an additional defendant for purposes of being accorded complete relief; however, Leibholz voluntarily dismissed Celgene as a defendant. An Amended Complaint was filed on November 10, 2005.

The eight counts of the Amended Complaint were: (i) Securities Fraud–Oral Misrepresentations Made Without a Present Intent to Perform; (ii) Securities Fraud–Written Misrepresentations Made Without a Present Intent to Perform; (iii) Fraud Under New Jersey Law–Oral Misrepresentations Made Without a Present Intent to Perform; (iv) Fraud Under New Jersey Law–Written Misrepresentations Made Without a Present Intent to Perform; (v) Promissory and Equitable Estoppel; (vi) Breach of Contract–Specific Performance; (vii) Breach of Contract–Money Damages; and (viii) Constructive Trust. On January 31, 2006, Hariri filed Counterclaims against Leibholz for (i) Invasion of Privacy–Misappropriation of Name and Likeness; (ii) Invasion of Privacy–False Light; and (iii) Fraudulent Advertising in violation of N.J.S.A. 56:8-2.

On March 2, 2006, Leibholz filed a motion to dismiss Hariri's counterclaims. Hariri responded with a motion for summary judgment, which was filed on April 10, 2006. On July 13, 2006, the Honorable Dickinson R. Debevoise, U.S.D.J., granted Leibholz's motion to dismiss Count III of Hariri's counterclaims but denied Leibholz's motion as to Counts I and II. In addition Judge Debevoise granted Hariri's motion for summary judgment as to Leibholz's First, Second and Fifth Causes of Action, but denied Hariri's motion as to Leibholz's Third, Fourth, Sixth, Seventh and Eighth causes of action. Finally, Judge Debevoise granted Hariri's motion for

summary judgment on Leibholz's Fifth Cause of Action to the extent that it alleges a promissory estoppel claim, but denied the motion to the extent that it seeks to establish an equitable estoppel claim.

Following Judge Debevoise's, July 13, 2006, ruling and after a reassignment of this matter from the Honorable Madeline Cox-Arleo, U.S.M.J., to this Court, a Scheduling Order was entered. (See Docket No. 50, January 25, 2007). The Scheduling Order allows the parties until June 30, 2007, to complete all fact discovery. Pursuant to the same Order, all expert discovery was to conclude no later than April 1, 2007. On March 3, 2007, this Court entered an Amended Scheduling Order extending expert discovery until May 1, 2007. (See Docket, No. 53). Thereafter, on April 17, 2007, this Court entered a Second Amended Scheduling Order extending expert discovery until June 16, 2007. (See Docket, No. 63). Throughout fact discovery there have been several informal discovery disputes regarding compliance with discovery demands to the parties and to third-parties most of which have been resolved without the need of formal motions being filed.

On March 21, 2007, Plaintiff filed the present Motion for Leave to File a Second Amended Complaint. Plaintiff seeks to: "(1) make certain clarifications and amendments reflecting the Court's July 13, 2006, ruling on summary judgment and clarifying certain facts and (2) adds a ninth cause of action for racketeering under the New Jersey RICO Statute, N.J.S.A. 2C:41-4." (See Plaintiff's Memorandum of Points, Docket No. 55-6 at 7).

**IV. DISCUSSION**

Although leave to amend the pleadings under *Fed.R.Civ.P.* 15(a) is generally given freely, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive

-6-

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *Jablonski v. Pan Am. World Airways*, 863 F.2d 289, 392 (3d Cir. 1988)(citations omitted). Finally, in determining a motion to amend a complaint the Court looks only at the pleadings. *Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau, Co., Inc.*, 106 F.Supp. 2d 761, 765 (D.N.J. 2000)(internal citations omitted).

In the instant matter Defendants do not claim, nor does this Court find, that there exists "undue delay, bad faith or dilatory motive on the part of the movant [or] repeated failure to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182. Moreover, Defendant does not assert or argue that the proposed amendment would be futile. *Id.* Therefore, the only issue before this Court is whether Defendant would suffer prejudice should the Court grant Plaintiff's Motion. Plaintiff seeks to amend certain language of the Complaint to reflect Judge Debevoise's July 13, 2007, ruling. The Court has reviewed such amendments and has determined that they do not change the face of the original Complaint and therefore, do not prejudice Defendant. Additionally, Plaintiff seeks to add Count Nine, racketeering under the New Jersey RICO Statute, N.J.S.A. 2C:41-4. The crux of Defendant's arguments is that the addition of such a count will prejudice Defendant. Therefore, this Court will undertake an evaluation of prejudice in this regard.

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.

1978). "Prejudice under [R. 15(b)] means undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party. *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969). Prejudice involves the serious impairment of the defendant's ability to present its case. *Harter v. GAF Corp.*, 150 F.R.D. 502, 509 (D.N.J. 1993).

In this case, Leibholz alleges that during the course of fact discovery, he "unearthed the existence of at least three other disputes between Hariri and other persons who were either employees or otherwise had a relationship with Lifebank/Anthrogenesis in the 1991 to 2001 time frame." (See Plaintiff's Memorandum of Points, Docket No. 55-6 at 5). Leibholz asserts that investigations of these persons and events provides a "compelling reason to believe that Hariri entered into a pattern and practice of obtaining or retaining for himself stock in Lifebank/Anthrogenesis that he promised to other parties in addition to Plaintiff Leibholz by denying that he had promised or caused a promise of issuance of stock to take place and/or arrange to have any such stock commitment rescinded on false grounds." (See id. At 6-7). It is the aforementioned information that has led to Leibholz's present motion.

Hariri does not spend much time on the merits of Leibholz's assertions. In fact he baldly asserts that the claim has no merit without providing any evidence to the contrary. Rather, as stated above, Hariri focuses on the prejudice that would result should Leibholz be permitted to add the RICO cause of action. Specifically, Hariri asserts that none of the individuals identified in Plaintiff's moving papers, as allegedly having suffered harm from Hariri's transactions, have been deposed in this action in connection with the alleged RICO claim. Hariri states that in order to properly defend against a RICO claim, Hariri will need to depose each new individual identified as well as any additional witnesses that may be identified in those depositions and

subpoena documents from each individual as well. Therefore, Hariri suggests that, in addition to the significant discovery already remaining to be completed in this case, further and extensive discovery will have to be undertaken. Additionally, Hariri asserts that any amendments to the Complaint would require this Court to delay any trial in this matter for a year or more. Finally, Hariri argues that the alleged acts Leibholz now complains of occurred between seven and ten years ago, implying that many of the important persons will be unavailable to testify or will have suffered from diminished memories. Certainly, this is speculation on Hariri's behalf.

This Court agrees with the parties that there is still significant discovery to be completed in this case. In fact, the parties have not yet deposed each other. Under these circumstances it is highly unlikely that discovery will be completed by the discovery end date. As practitioners in this District are surely aware, discovery end dates are often modified by the Court at the request of a party. While the expert discovery date in this matter has been extended on several occasions, the fact discovery end date has always remained the same. It would not be unusual, then, for the parties, as they approach the fact discovery end date, to realize that they require more time.

The Court recognizes the age of this case. Although, the Complaint dates from 2005, discovery has only just begun because the parties were awaiting decisions on dispositive motions. Additionally, there are still several more phases of this case that require completion before a trial date can even be set. The parties have only appeared before this Court on one occasion for a settlement conference, no final pretrial conference has been set and surely the parties will seek to file additional dispositive motions at the close of discovery. This case is not near completion as it stands in the presence sense and should Leibholz's motion be granted there will surely be even further delay as yet, another layer of discovery will need to be unearthed. This extension of time

is where Hariri asserts that he will suffer from the most prejudice. Leibholz disagrees.

To support their arguments, both Plaintiff and Defendant refer this Court to a related proceeding in the Superior Court of New Jersey, Law Division: Somerset County, Docket No. L-425-03, *Stein v. Celgene Corporation*, *Robert J. Hariri, Louis J. Meade and Anthrogenesis Corp.* At some point during the state court proceedings, Mr. Stein allegedly learned of information, similar to the information Leibholz now presents to this Court in support of the Motion to Amend the Complaint. On the eve of trial in the *Stein* matter, the Superior Court granted Mr. Stein a motion for leave to file an amended complaint to add a New Jersey Civil RICO count. Because of the Superior Court's ruling, discovery was extended in the *Stein* matter until December, 2007, with an anticipated trial date in the spring of 2008.

Leibholz suggests that this Court should look to the Superior Court's action in *Stein* for guidance on determining whether there would be prejudice to Hariri, in this case. Because the Superior Court found it permissible, Leibholz believes so should this Court. Leibholz also argues that discovery has just begun in this matter so a delay of the trial would not cause harm. Hariri on the other hand, asks this Court to look to the *Stein* matter to see the obvious delay that will be caused should Leibholz's motion be granted.

While the decision of the Superior Court in Stein is not controlling, it is certainly compelling. At least one other person, who was under the employ of Hariri, claims to have suffered similar, if not the same, damages as Leibholz and the Superior Court has determined that such claims may not be without merit.

This Court finds that: where Plaintiff moves to amend the complaint soon after it learns of the information relevant to the amendment; where the case is relatively new in terms of

-10-

discovery; where the discovery period is still open and will likely be extended even without an amendment; where there is no trial date and a final pretrial conference has not even been set; where further dispositive motions will surely be filed; and where another court has determined that the cause of action to be added is at least worth exploring there will be no prejudice to Defendant in granting the amendment. The Third Circuit has recognized that a motion to amend a complaint may be properly denied as unduly prejudicial to the defendants when it is made on the eve of trial or after the close of discovery. *See, e.g., Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990) (denying motion to add additional claims made on first day of trial). See *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir.) (denying motion to add additional claims made four months after new information became available and two months after the close of extended discovery); *Clark v. Township of Falls*, 890 F.2d 611, 624 (3d Cir. 1989) (denying motion to include events occurring after filing of complaint because the motion was made one week after close of discovery and three weeks before trial); *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (denying motion to add additional claim made four days before close of discovery and one month before trial which would unduly prejudice defendant on eve of trial). The non-moving party bears the burden of showing actual prejudice. *See Heyl & Patterson International, Inc. v. F.D. Rich Housing, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

  Of course this Court does not believe an open ended extension of discovery would either be fair or judicious. Moreover, this Court finds that unless good cause is shown, discovery on the causes of action already in existence in this matter will be governed by the Scheduling Orders already on the docket. However, immediately after the filing of Hariri's Answer to the Second Amended Complaint the parties will be required to appear before this Court to discuss what

-11-

discovery needs to be completed in regard to the New Jersey civil RICO count and a specific schedule will be set.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File a Second Amended Complaint is hereby granted.

The Court has considered this matter pursuant to *Fed. R. Civ. P.* 78, and for good cause shown,

**IT IS** on this 26th day of July, 2007,

**ORDERED** that Plaintiff's Motion for leave to file a Second Amended Complaint is granted; and it is further

**ORDERED** that Plaintiff shall file his Second Amended Complaint by August 27, 2007, to be served on Defendant thereafter by the time prescribed in the Rules; and it is further

**ORDERED** that Plaintiff shall notify the Court upon receipt of the Defendant's Answer in order to schedule a status conference at which time discovery shall be addressed.

                                                                  **s/ Esther Salas**
                                                  **HONORABLE ESTHER SALAS,**
                                                  **United States Magistrate Judge**