<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **STEPHEN W. LEIBHOLZ,** | Civil Action No.: 05-5148 (DRD) |
| Plaintiff, | **OPINION AND ORDER** |
| v. |  |
| **ROBERT J. HARIRI,** |  |
| Defendant. |  |

**I. INTRODUCTION**

This matter comes before the Court upon motion by non-parties Celgene Corporation ("Celgene") and Robert J. Hugin ("Hugin"), for a protective order under Rule 26(b)(2) and Rule 45(c) to: (1) quash the subpoena served by the Plaintiff Stephen W. Leibholz ("Leibholz") upon Hugin, dated August 10, 2007 and (2) quash the subpoena served upon Celgene, dated May 30, 2007.

**II. FACTUAL BACKGROUND**[1]

The Factual Background is set forth at length in other Opinions and only a limited background will be set forth within. Defendant Hariri ("Defendant" or "Hariri") is a medical doctor and researcher. Hariri formed LifeBank, Inc., which later changed its name to Arthrogenesis, Inc. LifeBank harvested stem cells from umbilical cords and placentas and performed medical research on the medical uses of umbilical blood stem cells.

---

[1] The limited factual background set forth within is taken in part from the Honorable Dickinson R. Debevoise's Opinion in this matter, July 13, 2006 (Document No. 35)[internal citations omitted] and Judge Salas' Opinion in this matter, July 27, 2007 (Document No. 70).

Plaintiff Leibholz ("Plaintiff" or "Leibholz") is a businessman and physicist with experience in U.S. defense contracting. In 2000, Leibholz was introduced to LifeBank as an advisor to Mr. Richard Farkas, one of the prospective investors in LifeBank. Thereafter, from early 2000, through September 2000, Leibholz periodically visited LifeBank and discussed management, marketing and technical matters with Hariri. Leibholz claims that "during one or more meetings in September of 2000," Hariri offered to give Leibholz LifeBank stocks and stock options from Hariri's personal holdings in exchange for Leibholz's services. Leibholz avers that he agreed to this arrangement, but he requested that Hariri confirm in writing the number of shares and share options that Hariri proposed. Leibholz alleges that he continued to perform services for Hariri in reliance on Hariri's oral promises.

On September 29, 2000, Hariri wrote Leibholz a letter stating that Hariri wanted Leibholz to have an equity interest in LifeBank "as an incentive for further collaboration." In the letter, Hariri pledged to give Leibholz 20,000 shares of Hariri's stock in LifeBank and 20,000 warrants to purchase LifeBank common stock from Hariri's personal holdings at $5.00 per share, exercisable through December 31, 2005.

Hariri does not dispute that he sent the September 29, 2000 letter. But Hariri claims that his September 29, 2000 letter merely outlined the draft terms of a possible business relationship with Leibholz's company, and that the proposal was retracted by a subsequent letter sent to Leibholz. The October 2, 2000, letter detailed a discussion Hariri had with John Haines, LifeBank's CEO, who advised Hariri against any business relationship with Leibholz. The first paragraph of the letter provided:

> After your visit last Friday I brought up the concept of the share transfer with John Haines and in discussion he realized that what you suggested is really not possible for several reasons. First of all, John pointed out that at this stage in the company's development any such transfers must be made in accordance with generally prescribed corporate policies which obligate me to obtain approval from the chief executive officer and board of directors for any such transaction. In addition, John indicates that Lifebank would not be interested in exchanging its shares for shares in your company, Techlabs, and that since there is really no overlap between what Lifebank does and what you and I might do at Techlabs,

>such a transfer could not be justified. John also points out that considering the tenuous state of finances at Lifebank, I am not authorized to discuss option or warrant programs that currently do not exist. I am sorry, but at this point I don't see the terms of the draft we came up with on Friday being doable.

(Moving Br., Exhibit C).

At the bottom of the October 2, 2000 letter was a handwritten note which provided, "Sorry Steve - but I didn't think this would work." (Moving Br., Exhibit C).

Plaintiff seeks discovery which would potentially prove that the October 2, 2000 letter was a fabrication. Plaintiff also seeks to depose Robert J. Hugin ("Hugin"), a shareholder and director of Celgene.

### III. DISCUSSION

Federal Rule of Civil Procedure 26 defines the methods, scope, limits and process of discovery. Section (b) of that rule establishes the scope and limits of discovery. It provides that parties may obtain discovery regarding any party's claim or defense. Rule 26(b) also provides that for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. As this court has recognized, "[c]ourts have construed this rule liberally, creating a broad vista for discovery." *Tele-Radio Sys. Ltd. v. DeForest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981). In interpreting Rule 26(b)(1), district courts must be mindful that relevance is a broader inquiry at the discovery stage than at the trial stage. *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

While broad, discovery is not boundless. Rule 26(b)(2) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. The Third Circuit

recognized this power stating that, "[a]lthough the scope of discovery under the Federal Rules is . . . broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Specifically, the rules provide that the frequency or extent of discovery otherwise permitted under the rules or by local rule shall be limited by the court if the burden or the expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

The Court's power to quash or modify a subpoena inherently lies within the provisions to enter a protective order under Fed. R. Civ. P. 26(c). A motion to quash is similar to a motion for a protective order that discovery not be had under Rule 26(c), and is judged under similar standards. 9 James W. Moore et al., *Moore's Federal Practice* § 45.50[2](3d ed. 2008). Federal Rule of Civil Procedure 26(c)(1) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including the following: (A) forbidding the disclosure or discovery; and (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

A court may quash or modify a subpoena if it fails to allow reasonable time for compliance, requires a non-party deponent to travel over 100 miles from his/her residence, or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv). The movant bears the burden of persuasion when requesting the entry of a protective order under Rule 26. *Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000).

1. Hugin Subpoena.

Celgene seeks to quash the subpoena served upon Hugin. Celgene states that Mr. Hugin was a top-level officer of Celgene at all times relevant to the litigation. (Moving Br. 14). Celgene further states that Hugin's involvement with Anthrogenesis prior to the merger with Celgene was purely as an investor and that he did not become a member of the board of directors until January 1, 2001, several months after Dr. Hariri allegedly made the promises of compensation that form the basis of this lawsuit. (Moving Br. 14). Celgene also states that Mr. Hugin has no conceivable connection with the plaintiff or his claims or with Dr. Hariri's defenses to the claims, does not know Mr. Leibholz and has no personal knowledge of the relevant facts. (Moving Br. 14). Celgene supports its position with reference to several cases, including *Murray v. County of Suffolk*, 212 F.R.D. 108, 109 (E.D.N.Y. 2002). The *Murray* Court held that depositions of high-level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute." *Id.*

Plaintiff cites *Linder v. Dep't of Def.* for the proposition that a party moving to quash a subpoena bears a heavy burden of proof. 328 U.S. App. D.C. 154, 133 F.3d 17, 24 (D.C. Cir. 1998) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 243 U.S. App. D.C. 19, 751 F.2d 395, 403 (D.C. Cir. 1984)). Plaintiff states that Celgene cannot meet the high standard in seeking to quash the subpoena. (Pl.'s Opp'n Br. 17). Plaintiff intends to question Mr. Hugin regarding the limitations (or the lack thereof) on the sale of his personal stock. (Pl.'s Opp'n Br. 17).

The Court finds that Celgene did not prove that Hugin's deposition would be unduly burdensome. Hugin's deposition is likely to lead to the discovery of admissible evidence under

the broad vista of discovery provided by the rules. Therefore, the Court will not quash Hugin's subpoena.

        2.        30(b)(6) Witness Subpoena - Schedule B of May 2007 Subpoena.

Plaintiff seeks to depose the computer administrator responsible for maintaining electronic copies of files, including electronic copies of the purported September 29, 2000 and October 2, 2000 letters. (Pl.'s Opp'n Br. 13). Plaintiff also requests Celgene to produce files of photocopies made in the September/October 2000 time frame at the Cedar Knolls, New Jersey Lifebank/Anthrogenesis offices. (Pl.'s Opp'n Br. 13). Plaintiff intends to have a forensic examiner compare the photocopies of the September 29 and October 2, 2000 letters with the photocopies made at the same time. (Pl.'s Opp'n Br. 14).

Celgene asserts that Plaintiff's request to depose a 30(b)(6) witness amounts to "over-discovery," against which Rule 26(b)(2) is designed to protect. (Moving Br. 15). In addition, Celgene states that it does not have its own internal copies of the documents sought by Plaintiff. (Moving Br. 15). Celgene further states that the hard drives of the computers in use before the merger have been erased and that it is impossible to determine which printer(s) were used by Dr. Hariri during the dates in question. (Moving Br. 16). Celgene supports its assertions with the Certification of Richard T. Girards, Jr., a Celgene patent attorney. Girards' Certification details Plaintiff's numerous discovery-related requests and Celgene's efforts to comply with the requests. (Girards' Cert.). However, Girards' Certification does not address Celgene's back-up procedures. Nor do the other Certifications submitted in support of the motion to quash address Celgene's backup policies and procedures. (See, for example, Ex. K to Moving Brief, June 20, 2006 letter from Mr. Hand to Mr. Zeller.) Rather, the Certifications provide Celgene's ultimate

determination that it did not possess the documents that Plaintiff repeatedly requested. (Girards' Cert. 4).

The purported September 29, 2000 and October 2, 2000 letters relate to the heart of this case. Therefore, the discovery sought is of large importance to the issues at stake in the action because the discovery sought could potentially resolve the issue of the October 2, 2000 letter's authenticity. The Court does not doubt that Celgene made sincere, concerted efforts to produce the discovery sought by Plaintiff. However, the Court does not find Plaintiff's request to depose a 30(b)(6) witness to be cumulative, duplicative or burdensome.

The Court finds that the testimony of a 30(b)(6) witness would most likely lead to the discovery of admissible evidence. In addition, the burden of the proposed discovery of a 30(b)(6) witness does not outweigh its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues.

Based on the foregoing, Celgene's motion to quash the subpoena of the 30(b)(6) witness is DENIED-IN-PART. The Court orders Celgene to produce a 30(b)(6) witness who can testify regarding the maintenance of electronic copies of files, including electronic copies of the purported September 29, 2000 and October 2, 2000 letters. The 30(b)(6) witness should also be prepared to testify regarding the backup procedures utilized, and the document and electronic record retention policies. Pursuant to 26(b)(2)(c) considerations, the Court will limit the period of discovery to January 1, 2000 through December 30, 2002.

     3.     <u>Document Subpoena - Schedule A of May 2007 Subpoena.</u>

In Schedule A of the May 2007 subpoena, Plaintiff seeks five numbered items. Celgene addressed each of the numbered items with Plaintiff. For example, Celgene sent Plaintiff a letter which asserts that it did not know which copier made the first copies of the October 2, 2000 letter. (Ex. L to Moving Brief, June 20, 2006 letter from Mr. Hand to Mr. Zeller.) Therefore, the Court will GRANT Celgene's motion for a protective order as far as the items detailed in Schedule A of the document subpoena. However, the Court will permit the following:

     a.     Following the deposition of the 30(b)(6) witness, counsel shall meet and confer regarding whether any of the items requested in Schedule A can be identified and produced.

     b.     If counsel disagree, counsel must submit a joint letter to the Court which outlines the disputed issues and each party's position regarding the disputed issues. The Court will then schedule the matter for an in-person status conference.

### IV. CONCLUSION

For the reasons listed above, Celgene's motion is GRANTED-IN-PART and DENIED-IN-PART.

                                            s/ Michael A. Shipp  
                                            **HONORABLE MICHAEL A. SHIPP**  
                                            **United States Magistrate Judge**

Dated: June 30, 2008